UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
----------------------------------------------------------
IN RE:

    PAUL J. GRIFFIN and                          CASE NO. 08-60902
    JEANNE M. GRIFFIN

                         Debtors                  Chapter 13
----------------------------------------------------------
APPEARANCES:

JAMES F. SELBACH, ESQ.
*Attorney for Debtors*
5858 East Molloy Road
Suite 180
Syracuse, New York 13211

MAXSEN D. CHAMPION, ESQ.
*Staff Attorney for Chapter 13 Trustee*
250 S. Clinton Street, Suite 203
Syracuse, New York 13202

WILLIAM F. LARKIN, ESQ.
*Assistant U.S. Attorney*
100 South Clinton Street
Syracuse, New York 13261

Hon. Diane Davis, U.S. Bankruptcy Judge

**MEMORANDUM-DECISION, FINDINGS OF FACT,
CONCLUSIONS OF LAW AND ORDER**

       Under consideration by the Court is a motion filed on June 17, 2008, as supplemented on July 31, 2008, by Paul J. and Jeanne M. Griffin (the "Debtors") pursuant to § 362(k) of the U.S. Bankruptcy Code, 11 U.S.C. §§ 101-1532 ("Code"). Debtors allege that the United States of America Social Security Administration ("SSA") violated the automatic stay and request the imposition of sanctions in the form of actual damages, specifically damages for emotional distress, and attorney's fees. Opposition was filed on August 8, 2008, on behalf of SSA.

The motion was originally scheduled to be heard at the Court's regular motion calendar in Utica, New York, on August 19, 2008. The motion was adjourned on consent of the parties to September 30, 2008, and thereafter to October 28, 2008. Following oral argument on October 28, 2008, the Court allowed both parties the opportunity to file memoranda of law. The matter was submitted for decision on November 14, 2008.[1]

## JURISDICTIONAL STATEMENT

This Court has core jurisdiction over the parties and subject matter of this contested matter pursuant to 28 U.S.C. §§ 1334, 157(a), (b)(1) and (2)(O).

## FACTS

The Debtors filed a voluntary petition ("Petition"), along with their plan ("Plan") pursuant to chapter 13 of the Code on April 18, 2008. SSA was listed as a priority creditor owed $7,057 by Mrs. Griffin and described as "repayment of Social Security overpaid." *See* Schedule E, attached to Debtors' Petition. According to the Plan, SSA was to receive full payment on its claim. An

---

[1] By letter dated February 4, 2009, the Hon. Stephen D. Gerling informed the parties that he would be retiring on February 27, 2009, and would be unable to render a decision prior to that date. He afforded the parties two options for their consideration, namely to reargue the motion before the undersigned once sworn in as the U.S. Bankruptcy Judge for the Northern District of New York (Utica Division) or simply to have a decision issued by the undersigned based on the papers submitted by the parties. By letter, dated February 18, 2009, the parties indicated their agreement that the matter be considered based on the existing record before the Court. The Court considers the matter to be submitted effective March 9, 2009.

Order confirming the Debtor's Plan was signed on July 15, 2008, while Debtors' § 362(k) motion was pending.

According to the Debtors, SSA sent them billing statements, addressed to Mrs. Griffin, dated May 2, 2008, June 4, 2008, and July 2, 2008, requesting payment of the balance on the overpaid amount. SSA acknowledges that it received notice of the Debtors' case on or about April 25, 2008. However, "because of processing delays, notice of the debtors' Chapter 13 petition was not entered into SSA's system until on or about July 11, 2008." *See* SSA Memorandum, filed October 23, 2008 (Dkt. No. 21). SSA also acknowledges that it received a payment of $50 from Mrs. Griffin on or about April 18, 2008, the date the Debtors filed their Petition, and another $50 on or about May 16, 2008. The latter $50 was returned to Mrs. Griffin by SSA on or about July 22, 2008.

Debtors seek actual damages for what they describe as emotional distress, mental anguish, psychological suffering, stress, harassment, humiliation, embarrassment, shame, etc. ("emotional distress"). They argue that the recovery of monetary damages for emotional distress from SSA is permitted pursuant to Code § 106(a), which states that sovereign immunity for governmental units is abrogated in connection with the violation of Code § 362(a).

By letter dated September 22, 2008, SSA conceded that it had violated the automatic stay (Dkt No. 18). However, SSA disputes whether the Debtors are entitled to an award of damages for emotional distress based on its assertion that Code § 106(a) does not provide an express waiver of sovereign immunity insofar as compensation for emotional distress is concerned, citing *In re Torres,* 432 F.3d 20 (1st Cir. 2005).

**DISCUSSION**

4

The Second Circuit Court of Appeals announced almost twenty years ago in the case of *Crysen/Montenay Energy Co. v. Esselen Assoc., Inc. (In re Crysen/Montenay Energy Co.)*, 902 F.2d 1098 (2d Cir. 1990) that "any deliberate act taken in violation of the stay, which the violator knows to be in existence, justifies an award of actual damages." *Id.* at 1105. In this case, SSA does not dispute that it violated the automatic stay by sending statements to the Debtors on three separate dates. The main issues that remain for the Court to consider is whether Code § 362(k) entitles a debtor to an award of monetary damages in compensation for emotional distress and whether the abrogation of sovereign immunity found in Code § 106(a) extends to an award of such damages when it is a governmental unit that has willfully violated the automatic stay.

**A. Damages for Emotional Distress for Violation of the Automatic Stay**

Whether damages for emotional distress are compensable for a willful violation of the automatic stay is an unsettled question. *Compare Aiello v. Providian Financial Corp.*, 239 F.3d 876 (7th Cir. 2001) with *Dawson v. Washington Mutual Bank (In re Dawson)*, 390 F.3d 1139 (9th Cir. 2004). *Aiello* involved a class action brought against a credit card company for what was asserted to be its extortionate approach in obtaining reaffirmation agreements from debtors. The Seventh Circuit Court of Appeals considered whether the plaintiffs were entitled to an award of damages for emotional injury caused by a willful violation of the automatic stay. The court in *Aiello* took the view that the automatic stay was financial in nature and was not intended to protect a debtor's peace of mind. It acknowledged the possibility that a plaintiff could recover for emotional injury if it was first established that there had been some financial loss under the theory of the "clean up doctrine" or judicial economy or piggybacking a claim of damages for "incidental emotional distress." *Aiello,* 239 F.3d at 880. However, the court made it clear that without a showing of a financial loss, a claim

5

purely for emotional distress must fail. *Id.*

In *Dawson* the Ninth Circuit Court of Appeals took a somewhat different approach. It examined the legislative history of Code § 362(h),[2] including several passages from the House Report in which concern was expressed for the harassment by creditors and the need that debtors be protected from such pressures as abusive phone calls and threats of court action. *Dawson*, 390 F.3d. at 1148 (citing H.R. Rep. No. 95-595, at 125-26, *reprinted in* 1978 U.S.C.C.A.N. 5963, 6086-87). Of interest is a quote taken from a footnote in the House Report directing the reader to an Appendix and a statement made by an attorney for the Federal Trade Commission in connection with abuses to which consumers are subjected. Specifically, the attorney stated that:

> The consumer who seeks the relief of a bankruptcy court is an individual who is in desperate trouble . . . . The short term future that he faces can literally destroy the basic integrity of his household. We believe that this individual is entitled to a focused and compassionate effort on the part of the legal system to alleviate otherwise insurmountable social and economic problems. We believe that relief should be provided with fairness to all concerned but with due regard to the dignity of the consumer as an individual who is in need of help.

*Dawson*, 390 F.3d at 1148 (citing H.R. Rep. No. 95-595, at 173, *reprinted in* 1978 U.S.C.C.A.N. 5963, 6134). The court determined that "harm done to those nonfinancial interests by a violation [of the automatic stay] are cognizable as 'actual damages.'" *Id.* It held that "a claim for emotional distress damages is available if the individual provides clear evidence to establish that significant harm occurred as a result of the violation . . . ." *Id.* at 1148-49. Ultimately, the court in *Dawson* concluded that Code § 362(h) "encompasses more than protection of financial interests" and that any one form of damages should not be dependent on the existence of another. *Id.* at 1149.

---

[2] The statute was initially codified at 11 U.S.C. § 362(h) (1984), and was re-codified in the Bankruptcy Act Prevention and Consumer Protection Act at 11 U.S.C. § 362(k) (2005).

The court then went on to set forth the standard for examining whether an award of damages for emotional distress was warranted. The court in *Dawson* held that "to be entitled to damages for emotional distress under § 362(h), an individual must (1) suffer significant harm, (2) clearly establish the significant harm, and (3) demonstrate a causal connection between that significant harm and the violation of the automatic stay (as distinct, for instance, from the anxiety and pressures inherent in the bankruptcy process)." *Id.* It noted that "an individual can prove entitlement to emotional distress damages even in the absence of corroborating evidence and even in the absence of an egregious violation, if the individual in fact suffered significant emotional harm and the circumstances surrounding the violation make it obvious that a reasonable person would suffer significant emotional harm." *Id.* at 1150-51; *see also In re Wingard,* 382 B.R. 892, 904 (Bankr. W.D.Pa. 2008) (noting that "when the willful violator of the automatic stay has engaged in conduct that is patently or obviously egregious, emotional distress injuries may be proven merely by credible debtor testimony alone without resort to other extrinsic and corroborating evidence"); *In re Sullivan*, 367 B.R. 54, 58 (Bankr. N.D.N.Y. 2007) (Gerling, B.J.) (indicating that "actual damages for emotional distress can be awarded where other corroborating evidence is presented, or if the circumstances of the violation are so egregious that they clearly merit emotional distress damages").

The U.S. District Court for the Northern District of Ohio reached a different conclusion, finding that Code § 362(h) authorized compensation for "only tangible/economic injuries." *United States v. Harchar*, 331 B.R. 720, 727 (N.D. Ohio 2005), *on remand* 2006 WL 3196846 (Bankr. N.D.Ohio Oct. 4, 2006), *aff'd,* 371 B.R. 254 (N.D.Ohio 2007), *clarification denied,* 2007 WL 1876510 (N.DOhio, June 28, 2007), *on remand*, 393 B.R. 160 (Bankr. N.D.Ohio 2008). The district court in *Harcher* relied on what it interpreted as the holding in *Aiello,* namely that emotional distress

7

is not a compensable injury under § 362(h) and rejected the holding in *Dawson*. The court in *Harcher* did take exception to the view expressed in *Aiello* in leaving open the possibility that proof of emotional distress could be considered as an "incidental harm" in the interest of judicial economy where the individual was able to first establish a financial loss, finding that "aspect of the *Aiello* court's reasoning" to be flawed. *Harchar*, 331 B.R. at 726, n.14.

This Court concludes the approach taken by the court in *Dawson* to be the better reasoned decision and continues to believe that emotional distress injuries are compensable for willful violations of the automatic stay under the appropriate circumstances. Indeed, in a prior decision this Court had occasion to reject the holding of the Seventh Circuit Court of Appeals for the Seventh Circuit in *Aiello*. *See In re Ficarra*, Case No. 00-62714 (Bankr. N.D.N.Y. April 17, 2002) (Gerling B.J.). Judge Gerling concluded that "emotional distress is an injury itself, and, therefore, may be the basis for an award of actual damages, even where no financial injury has been demonstrated." *Id.* at 9. Judge Gerling found favor with the analysis used by the district court in *Aiello* used in evaluating damages for emotional distress. *Id.* at 11 n.7. The district court in *Aiello* observed that

> emotional distress must be more than "fleeting, inconsequential and medically insignificant" to be compensable. Surely this requisite severity can be established by medical or other supporting evidence. Where no medical evidence exists, however, emotional distress can be reasonably presumed where the stay violation is sufficiently offensive . . . [S]uch a presumption is justified when, for example, the debtor is physically threatened, the violative act constitutes an invasive and personal attack, or a tangible and substantial adverse action results from the stay violation.

Aiello, 257 B.R. 245, 250-51 (N.D.Ill. 2000).

Having reached the conclusion that a willful violation of the automatic stay may warrant compensation for emotional distress pursuant to Code § 362(k), the Court is still left with the issue of whether sovereign immunity prevents it from making such an award against a governmental entity

such as SSA.

## B. Sovereign Immunity

Code § 106(a) expressly abrogates sovereign immunity of a governmental unit with respect to Code § 362 and an award of actual damages for its violation. *See* 11 U.S.C. § 106(a)(1). However, the statute expressly provides that an award of punitive damages in connection with a violation of the automatic stay is not authorized against a governmental unit. *See* 11 U.S.C. § 106(a)(3).

The Court has reviewed several decisions by several courts in which an award of damages for emotional distress was considered in connection with a willful violation of the automatic stay by a governmental entity:

In *In re Flynn*, 185 B.R. 89 (S.D.Ga. 1995), the Internal Revenue Service ("IRS"), despite having knowledge of the case, issued a levy on the debtor's checking account and also froze the account. The debtor was forced to cancel her son's birthday party and suffered embarrassment at the grocery store when she was stopped in the checkout line because a previous check had bounced. In addition, she lost three days of wages as a result of having to attend court hearings and incurred charges for checks returned for insufficient funds. The district court concluded that an award of damages for emotional distress was warranted against the IRS despite the lack of any medical testimony. *Id.* at 93. The district court affirmed the award by the bankruptcy court of $588.55 in out-of-pocket expenses, as well as $5,000 in damages for emotional distress. *Id.* at 94.[3]    In *In re*

---

[3] Pursuant to the Bankruptcy Reform Act of 1994, which amended Code § 106(a), the district court reversed that portion of the bankruptcy court's decision that had awarded the debtor $10,000 in punitive damages.

*Matthews*, 184 B.R. 594 (Bankr. S.D.Ala. 1995), the IRS sent the debtors notices of levy for their 1983 and 1984 taxes on September 3, 1992, after the debtors had filed a chapter 7 petition on May 4, 1992. On October 20, 1992, the debtors' attorney sent correspondence informing the IRS that they had filed bankruptcy and that the taxes had been declared dischargeable. On November 23, 1993, approximately a year later, the IRS sent the debtors a "Final Notice" demanding payment in full of the taxes. Included with the notice was what the court described as an "inconspicuous, unexplained insert" indicating that it applied "only on property abandoned in bankruptcy case 92-10939." *Id.* at 596-97. On December 13, 1993, an IRS employee also sent a letter to the debtors' counsel threatening criminal sanctions if he continued "'to interfere with the IRS.'" *Id.* at 597. On May 2, 1994, the Automated Collection Services of the IRS sent Notice of Intent to Levy the 1983 and 1984 taxes and that same day seized the debtors' 1992 tax refund. Two weeks later, on May 16, 1994, it also seized their 1993 tax refund.

Ultimately, the court in *Matthews* concluded that the IRS had violated the automatic stay, as well as the discharge injunction. It noted that the IRS knew of the bankruptcy and the discharge and still proceeded against the debtors' property. "Mistake or computer error or good intentions is not an excuse when the problems continue for two years and at least eight different actions are taken by the IRS." *Id.* at 598. The court then addressed the issue of damages, pointing out that the actual damages were not easily calculable as there were no medial bills or expert opinion of any long term physical effects. The court in *Matthews* examined *Flynn, supra,* as well as another decision rendered the same day by the same judge, namely *In re Washington*, 172 B.R. 415 (Bankr. S.D.Ga. 1994), *aff'd in part, vacated in part by* 184 B.R. 172 (S.D.Ga. 1995), in which the bankruptcy court made no award for mental anguish. The court in *Matthews* pointed out that "[t]he difference in the

two cases shows the issue all courts must face - the degree of harm." *Matthews*, 184 B.R. at 601.

In *Matthews* the debtors testified that Mr. Matthews was so upset he vomited and Mrs. Matthews cried. Mrs. Matthews was so stressed by the repeated letters that she had to resign from her job. *Id.* at 597. In addition to attorneys' fees, the court awarded the debtors $3,000 in compensatory damages for what it described as "the loss of use of funds [for more than a year] and stress suffered by the Matthews." *Id.*

In *In re Davis,* 201 B.R. 835 (Bankr. S.D.Ala. 1996), the debtors sought an award of $2,000 for what they described as trauma and humiliation when several checks written to local merchants with whom they regularly did business were returned for insufficient funds after the IRS had levied on their bank accounts. The IRS had sent the debtors several dunning letters demanding payment prior to levying on the debtors' accounts. *Id.* at 836. The court found it "clear" that the debtors had suffered embarrassment; however, it did not believe the embarrassment warranted an award of $2,000 as requested by the debtors. Instead, the court awarded them $300 or 150% of their out-of-pocket costs. *Id.* at 837.

In *In re Holden*, 226 B.R. 809 (Bankr. D.Vt. 1998), the Hon. Francis G. Conrad concluded that "[e]motional distress is an actual injury" and that the debtors should be given an opportunity to prove such damages against the IRS, which had seized the debtors' tax refund based on a prepetition debt. The court indicated that it would schedule an evidentiary hearing, noting that "medical testimony is mandated" in connection with any proof of emotional damages. *Id.* at 812.

In contrast, the court in *In re Covington*, 256 B.R. 463 (Bankr. D.S.C. 2000), found that the debtors were entitled to an award from the United States of America to compensate them for "the trauma they endured during the period of time the IRS violated the stay" without the need for

11

corroborating medical testimony. *Id.* at 467. In that case, the IRS had sent the debtors a "Notice of Intent To Levy - You Must Respond Now." The court concluded that the notice did not constitute an assessment or demand for payment, which is excepted from the automatic stay pursuant to Code § 362(b)(9)(D). *Id.* at 466. The court found that "under the circumstances the debtors proved emotional distress without the need for medical testimony" and awarded the debtors $1,000 in damages. *Id.* at 467. Those "circumstances" included the earlier receipt of a notice of levy from the South Carolina Department of Revenue by which it recovered approximately $4,000 from the debtors' account. The court found that "this prior collection activity, though not by the IRS, is relevant as to the debtor's state of mind during the period the defendants violated the stay." *Id.*

A similar approach was taken by the Court in *In re Atkins*, 279 B.R. 639 (Bankr. N.D.N.Y. 2002). (Littlefield, B.J.) In that case, Judge Littlefield awarded $30,000 in compensatory damages for emotional distress arising from actions taken by the United States, acting through the Farmers Home Administration, following the chapter 7 debtor's discharge, for what he described as "a portrait of a large bureaucracy running amuck" and "fourteen years of ongoing 'torture.'" *Id.* at 645. The court was careful to point out that pursuant to Code § 106(a)(3) it had to "be vigilant to not allow the punitive to creep into the compensatory" and that any award of damages "must not be based on mere speculation, guess or conjecture." *Id.* at 649, citing to *Flynn*. Accordingly, he declined to award the $150,000 requested by the debtor, finding that amount to be more in the nature of "punitive," and, instead, awarded $30,000 as "appropriate" as it balanced "the wrong committed versus the harm caused." *Id.*

More recently, the court in *In re Bailey*, Case No. 06-10994, Adv. Pro. No. 06-1761, 2007 WL 2049007, at *4 (Bankr. S.D.N.Y. July 10, 2007), relying on the legislative history of Code §

12

362, pointed out that one of the purposes of the automatic stay is to prevent "harassment" of the debtor. *Id.* at *5. In *Bailey*, the SSA had sent a single letter to the debtor seeking to recover an overpayment of benefits received by her on behalf of a disabled child that had died four months prepetition. Unfortunately, for purposes of this discussion, the court in *Bailey* declined to address the issue of compensation for emotional distress because of what it termed "inadequate" briefing. Instead, the court requested that the parties contact chambers to arrange a status conference. *Id.* at *5-6.

It is clear from a review of these cases, that the SSA is correct in its assertion that the issue of sovereign immunity in the context of damages for emotional distress was given little, if any, consideration or analysis by those courts. Instead, they simply examined the nature of the willful violation of the automatic stay in deciding whether to award damages. In this case, however, the issue has been raised by SSA and must be addressed. It is SSA's position that any waiver of sovereign immunity must be "unequivocably expressed" in the text of the statute. *See Lane v. Pena*, 518 U.S. 187, 192 (1996). Furthermore, any waiver must be strictly construed in favor of the governmental unit. *Orff v. United States*, 545 U.S. 596, 602 (2005).

SSA points out that compensation for emotional distress caused by a willful violation of the automatic stay by a governmental unit is not unequivocally expressed in Code § 106(a).[4] In *Torres* the First Circuit Court of Appeals, determined that the debtors were not entitled to an award of

---

[4] The Court would be remiss if it did not observe that a number of the cases relied on by SSA either were issued prior to the extensive amendment of Code § 106 in 1994, or address the discharge injunction set forth in Code § 524, in conjunction with Code § 105, rather than Code § 362(k). *See, e.g., In re Torres,* 432 F.3d 20 (1st Cir. 2005)*; Bessette v. Avco Financial Services, Inc.*, 230 F.3d 439 (1st Cir. 2000).

monetary damages for emotional distress pursuant to the inherent contempt power of the court set forth in Code § 105(a) for the IRS's violation of the discharge injunction of Code § 524. *See Torres*, 432 F.3d at 31. This Court, of course, is not bound by the decision in *Torres.* In addition, it is important to note that there is a difference in statutory remedies available for a violation of the automatic stay pursuant to Code § 362(k) and for a violation of the discharge injunction pursuant to Code § 524.

Code § 524 provides that a discharge in a case operates as an injunction against actions taken to collect a debt as a personal liability of the debtor. However, Code § 524 does not provide a specific remedy when the injunction is violated. As one court observed, "violation of the discharge injunction does not give rise to statutory damages. Rather, courts use their inherent civil contempt power under Code §105 to provide a remedy for violations of discharge injunction." *In re Baker*, 390 B.R. 524, 531(Bankr. D.Del. 2008), *aff'd*, 400 B.R. 136 (D.Del. 2009). Indeed, another court recently noted, "'a contempt order is the appropriate remedy for violations under § 524(a)(2), and . . . any monetary relief awardable is in the form of sanctions, rather than damages.'" *In re Nassoko*, __ B.R. __, Case No. 07-11966, 2009 WL 1578541, at *9 (Bankr. S.D.N.Y. June 5, 2009), quoting *In re Weichmann*, Case No. 96B24260, 2001 WL 1836189, slip op. at *1 (Bankr. N.D.Ill. Oct. 30, 2001).

Clearly, there is a distinction to be drawn when one considers the issue of compensation for emotional distress in the context of a violation of the discharge injunction and a violation of the automatic stay. Unlike Code § 524, Code § 362(k) expressly provides for the recovery of actual damages by an individual injured by any willful violation of the automatic stay. Admittedly, Congress saw fit to expressly exclude the right to recover punitive damages from a governmental

14

unit in Code § 106(a)(3). However, it did not exclude the right to recover damages for emotional distress. The Court concludes that Code § 106(a) unequivocally provides for the abrogation of sovereign immunity in connection with an award of actual damages, including damages arising from emotional distress to the extent that they were caused by the willful violation of the automatic stay by a governmental unit and not from the anxiety and pressures inherent in the bankruptcy process.

Based on the foregoing, it is hereby

ORDERED that an inquest on the issue of damages is scheduled to be held on August 11, 2009 at 9:00 a.m.

**IT IS SO ORDERED**


Dated at Utica, New York
this 1st day of July 2009


      /s/Diane Davis_____
      DIANE DAVIS
      U.S. Bankruptcy Judge